IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LINDSIE WILLIAMSON, Plaintiff, v. MGS BY DESIGN, et al. Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** Case No. 2:19-cv-434 Howard C. Nielson, Jr. United States District Judge |

Plaintiff Lindsie Williamson sued Defendants MGS by Design and Daniel Nelson, alleging that the Defendants violated Utah law and the federal Equal Pay Act by failing to pay her sales commissions while paying commissions to similarly situated male salespeople. The parties have filed cross motions for summary judgment. For the following reasons, the court grants Defendants' motion for summary judgment on Plaintiff's Equal Pay Act claim. The court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice.

I.

Ms. Williamson worked for MGS by Design and Mr. Nelson from approximately February 2014 until August 2018.[1] *See* Dkt. No. 19-2 ¶ 2. Ms. Williamson was initially hired in 2014 as an office administrative assistant and was paid an hourly wage for her administrative

---

[1] The facts set forth in this section are drawn from declarations and deposition testimony submitted by the parties and are undisputed, except as noted.

1

work. *See* Dkt. No. 16-2 at 4 (10:3–11:19). In 2017, while continuing to perform her administrative duties for an hourly wage, Ms. Williamson also began to sell MGS products and services and received commissions as compensation for the sales. *See id.* at 4–5 (13:14–17:25).

Ms. Williamson and MGS's other salespeople sold MGS products and services using MGS's price lists and MGS's estimate and invoice forms. *See* Dkt. No. 19-2 ¶ 3. Ms. Williamson and MGS's other salespeople set their own schedules, chose which potential customers to work with, selected the time and manner of their contacts with those potential customers, and met independently with them. *See* Dkt. No. 24-2 ¶¶ 7–9. The salespeople did not make significant investments in connection with their sales work but did on occasion use some of their own equipment, such as cell phones and computers. *See* Dkt. No. 24-2 ¶ 10.

In 2017, Ms. Williamson was paid $41,449.30 for her administrative work. *See* Dkt. No. 16-2 at 11 (86:3–10). These earnings were reported on a W-2 form. *See id.* She was also paid commissions of $21,617.99 for her sales work that year, which were separately reported on a 1099 form. *See id.* (86:17–20). In 2018, MGS proposed to change its commission structure so that commissions would no longer be calculated based on gross sales price but would instead be based on net sales profit. *See id.* at 6 (18:16–21:1). Ms. Williamson maintains that the new payment structure was never actually adopted. *See id.* Defendants disagree. *See* Dkt. No. 29 ¶ 8.

Ms. Williamson alleges that she made a number of sales for MGS during 2018 but was not paid any commissions. She estimates that she should have been paid $32,539.10 in commissions for her 2018 sales. *See* Dkt. No. 26 at 1. Ms. Williamson was the only woman working as a salesperson for MGS that year. *See* Dkt. No. 16-2 at 8 (29:10–17). The four men who worked as salespeople for MGS that year were paid at least some commissions for their 2018 sales. *See* 19-4 at 31–32.

Ms. Williamson left her position at MGS in August 2018. *See* Dkt. No. 16-2 at 5 (15:1–3). She brought this lawsuit in June 2019. Following discovery, both parties moved for summary judgment.

## II.

Pursuant to Fed. R. Civ. P. 56 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## III.

The Equal Pay Act prohibits employers from "discriminating on the basis of sex" by paying employees of one sex less than they pay "employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1) (cleaned up). It is undisputed that the Equal Pay Act applies to employees but not to independent contractors. And there is no dispute that Ms. Williamson performs her administrative duties as an employee.

Ms. Williamson has not argued that an individual who works for a business in different capacities cannot be an employee in one capacity and an independent contractor in another capacity. Here, Ms. Williamson began working as an employee for an hourly wage and later took on sales work, for which she was paid commissions, in addition to her previous duties. Defendants' liability under the Equal Pay Act turns on whether Ms. Williamson worked as an employee or as an independent contractor when she sold MGS's products and services.

Although the parties dispute which test the court should apply to determine whether Ms. Williamson was an independent contractor or an employee, the court concludes that the law is clear on this issue. The Tenth Circuit has specified that courts must apply the "economic

3

realities" test to determine whether an individual is an employee or an independent contractor for purposes of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. *See Doe v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989). Because the Equal Pay Act is contained within the FLSA, the court concludes that the same test applies here.

"In determining whether an individual is covered by the FLSA," the court's "inquiry is not limited by any contractual terminology or by traditional common law concepts of employee or independent contractor." *Baker v. Flint Engineering & Construction Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (cleaned up). "Instead, the economic realities of the relationship govern, and the focal point is whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself." *Id.* (cleaned up).

The economic realities test is an overarching inquiry based on the totality of the circumstances. In applying this test, the court considers the following six factors: (1) the degree of control exercised by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *See Acosta v. Paragon Contractors Corporation*, 884 F.3d 1225, 1235 (10th Cir. 2018). The inquiry is "based on the totality of the circumstances, and no single factor is dispositive." *Id.* The classification of an individual as an employee or independent contractor is a question of law. *See id.*

Several of these factors support Ms. Williamson's argument that she performed her sales work as an employee. These include the worker's investment in the business, the permanence of the working relationship, the degree of skill necessary to perform the work, and the extent to which the work was an integral part of the alleged employer's business.

In looking at the worker's investment, the court must "compare the investments of the worker and the alleged employer." *Id*. at 1236. Here, the products and services Ms. Williamson sold all belonged to MGS, and while Ms. Williamson may have used her own time, phone, and computer, there is no evidence that she made any other investments in her sales work.

In considering the permanence of the working relationship, the court notes that "independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and of indefinite duration." *Id*. (cleaned up). Ms. Williamson was not a temporary employee, working for many employers over time. Rather, she had a continuous and relatively lengthy relationship with MGS. The record contains no indication that she sold products or services for any other company.

As for the degree of skill necessary to perform the work, the Tenth Circuit has explained that if a job requires "specialized skills," an individual is more likely to be considered an independent contractor. *See id*. at 1237. "These specialized skills are distinct from general occupational skills that any good employee in any line of work must have." *Id.* (cleaned up). In this case, there is no evidence that any specialized skills were required to sell MGS's products and services. To the contrary, it appears that salespersons needed only knowledge of these products and services and "general occupational skills."

Finally, the court has little doubt that the sales work performed by Ms. Williamson and MGS's other salespersons is an integral part of MGS's business. Without this work, the company would be unable to sell its products and services and make a profit.

The remaining factors, however, weigh in favor of a conclusion that Ms. Williamson was an independent contractor. These include the degree of control exercised by the alleged employer over the worker and the worker's opportunity for profit and loss.

In evaluating the degree of control exercised by an alleged employer over a worker, the court must "consider various considerations such as independence in setting work hours and other conditions and details of work, the extent of supervision, and the degree of ability to work for other employers." *Id.* at 1235 (cleaned up). Ms. Williamson and the other salespeople at MGS had a great deal of independence over their sales work. They set their own schedules, chose which potential customers to work with, met independently with these potential customers, and were otherwise independent from supervision.

As for the worker's opportunity for profit or loss, the court must consider whether Ms. Williamson had the ability to profit based on her performance. *See id.* at 1236. Unlike the plaintiff in *Acosta*, *see id.*, Ms. Williamson was not paid a flat fee for her sales work. Rather, she was paid commissions. The more products and services she sold, the greater profit she made for herself. To be sure, the amount of the commissions may have fluctuated, and the payment schedule was set by MGS. But that does not change the fact that the more Ms. Williamson sold, the more money she made. She thus had the ability to profit based on her own sales performance.

Determining whether Ms. Williamson was an employee or an independent contractor under the economic realities test requires more than a simple mathematical comparison of the number of factors supporting the conclusion that she was an employee with the number of factors supporting the conclusion that she was an independent contractor. *See id.* at 1235. Rather, the court must look at the totality of the circumstances and must ultimately determine whether Ms. Williamson "depended economically" on the sales work or was "in business for [herself]."

*Id*. at 1238. While several of these factors do suggest that Ms. Williamson performed her sales work as an employee, the court concludes that the totality of the circumstances point in the other direction.

The two factors that weigh in favor of independent contractor status, weigh heavily. Ms. Williamson was compensated through commissions, with her profits directly proportionate to the amount of sales work she chose to do and the success of her performance. She undertook the sales work with a great degree of independence and of her own volition, to supplement the wages she received for her administrative duties. Considering the totality of the circumstances, the court concludes that although Ms. Williamson no doubt was "economically dependent" on the wages she received for her administrative work, the same is not true of her sales commissions.

While the sales commissions no doubt provided a significant boost to Ms. Williamson's income, they resulted from work she chose to take on in addition to her regular administrative work, in the amount she chose, and over which she exercised a great deal of independence and control. The court thus concludes that, with respect to her sales work, Ms. Williamson was not economically dependent on MGS but was instead in business for herself.

Because Ms. Williamson was not an employee for the purposes of the FLSA with respect to her sales work, her claim under the Equal Pay Act fails. The court thus grants Defendants' motion for summary judgment and denies Ms. Williamson's motion for summary judgment on the third cause of action.

### IV.

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise [supplemental] jurisdiction over any remaining state claims." *Smith v. City of Enid By and Through Enid City Com'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also* 28 U.S.C

§ 1367(c)(3). Because the court grants summary judgment for Defendants on Plaintiff's sole federal claim, it will follow this guidance here.

While Ms. Williamson may very well be entitled to payment of her sales commissions under Utah law, this court will not address her state-law claims. Rather, the court dismisses these claims without prejudice.

* * *

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED** with respect to Count 3. Counts 1 and 2 are **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

DATED this 30th day of March, 2021.

BY THE COURT:

_____

Howard C. Nielson, Jr.
United States District Judge